## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | ) | No. _____ |
| | ) | |
| GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | ) | Case No. |
| | ) | |
| This Document Relates to: | ) | COMPLAINT |
| | ) | |
| KAREN CARR, on behalf of the class of members of deceased ROBERT MILLS, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| RICHARD GRANT, individually, | ) | |
| | ) | |
| ALICE FLAKE, individually, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| AARON LYLE, individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL MOTORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COME NOW Plaintiffs, and for their claims and causes of action for their injuries against Defendant GENERAL MOTORS LLC, allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff KAREN CARR is a resident and citizen of the State of Florida.  Plaintiff Karen Carr survives ROBERT MILLS as his lawful daughter.  She brings this action for her father's personal injuries on behalf of all eligible class members.  ROBERT MILLS died on June 28, 2016.

2.    Plaintiff RICHARD GRANT is and was at all times relevant a resident and citizen

of the State of South Carolina.

3.    Plaintiff ALICE FLAKE is and was at all times relevant a resident and citizen of the State of Arkansas.

4.    Plaintiff AARON LYLE is and was at all times relevant a resident and citizen of the State of Kentucky.

5.    Defendant GENERAL MOTORS LLC ("New GM" or "Defendant") is not a citizen of the states mentioned above. General Motors LLC is (and was at the time this lawsuit was filed) a Delaware limited liability company with its principal place of business in Michigan.  General Motors LLC's sole member and 100 percent owner is General Motors Holdings LLC, which is also a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member and 100 percent owner is Defendant General Motors Company, which is (and was at the time this lawsuit was filed) a publicly traded Delaware corporation with its principal place of business in Michigan, making General Motors LLC a citizen and resident of Delaware and Michigan.

6.    With respect to the facts alleged and claims asserted in this Complaint, New GM is the corporate successor of General Motors Corporation ("Old GM"), which filed a voluntary Petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1, 2009.  (General Motors Corporation and General Motors LLC will be collectively referred to as "GM").   On or about July 10, 2009, New GM acquired substantially all of the  assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code. Plaintiffs' causes of action in this lawsuit are brought against New GM for acts or omissions that occurred after July 10, 2009, and Plaintiffs do not assert any causes of action against Old GM. Although this Complaint references  facts against Old GM, it  is  for background and reference purposes only.  At all times relevant to the claims in this lawsuit, GM  has been in the business

of developing, manufacturing, and marketing cars throughout the states listed herein and the entire United States of America.

7.      Complete diversity exists between Plaintiffs and Defendant.  Plaintiffs are each seeking damages in excess of $75,000.00, exclusive of interest and costs.  Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.  Further, all claims are timely filed under the applicable state law from the date of accident or the date of recall, or other applicable date.  Further, any allegedly applicable statute of limitation or statute of repose should be equitably or lawfully tolled or the Defendant equitably estopped from asserting any such affirmative defense or claim due to Defendant's purposeful and fraudulent concealment of the defects, which are subject of this lawsuit.  Plaintiffs could not have known or been on reasonable notice of the Defendant's illegal conduct or the defects until they received actual notice of the applicable vehicle recall.  Defendant's lack of timely recalls and failure to notify the U.S. Government of the accidents and injuries leading up to the recalls was done to dissuade or prevent civil claims against Defendant.  As set forth more fully below, Defendant has unclean hands from its own behavior from July 10, 2009 to the present that should prevent its assertion of any statute of limitation or statute of repose affirmative defense.

8.      Pursuant to the Court's instructions, Plaintiffs may file directly in the MDL court and reserve the right to have filed in another district. Plaintiffs filed in this District in order to advance the efficient and orderly resolution of claims arising from Defendant's conduct and its attendant nationwide devastating effects. Filing in this District does not alter the choice-of-law analysis and does not waive Plaintiffs' rights to transfer to another district at the conclusion of pretrial proceedings in this case. Therefore, this Complaint is filed by Plaintiffs as if they had filed in the district in which their accidents occurred, or other lawful jurisdiction.

- For Plaintiff KAREN CARR this Complaint is filed as though it were filed in the Northern District of Florida, Pensacola Division.

- For Plaintiff RICHARD GRANT this Complaint is filed as though it were filed in the District of South Carolina, Columbia Division.

- For Plaintiff ALICE FLAKE this Complaint is filed as though it were filed in the Western District of Arkansas, Fort Smith Division.

- For Plaintiff AARON LYLE this Complaint is filed as though it were filed in the Western District of Kentucky, Louisville Division.

9.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over New GM because New GM conducts substantial business in this District, and upon information and belief, consents to jurisdiction.

10.    Venue is proper in this District under 28 U.S.C. § 1391 because New GM, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

## BACKGROUND FACTS

11.    As used in this petition, the "Subject Vehicles" refers to the vehicles the Plaintiffs were traveling in at the time of their accidents and the GM vehicles sold in the United States equipped at the time of sale with ignition switches ("Ignition Switches") sharing a common, uniform, and defective design or manufacture, including but not limited to the following makes and model years.

- 2005-2010 Chevrolet Cobalt
- 2006-2011 Chevrolet HHR
- 2006-2010 Pontiac Solstice
- 2003-2007 Saturn Ion
- 2007-2010 Saturn Sky

- 2005-2010 Pontiac G5
- 2004-2008 Pontiac Grand Prix
- 2003-2014 Cadillac CTS
- 2000-2005 Cadillac Deville
- 2004-2006 Cadillac SRX
- 2006-2011 Cadillac DTS
- 2005-2009 Buick Lacrosse
- 2006-2011 Buick Lucerne
- 2010-2014 Chevrolet Camaro
- 2000-2014 Chevrolet Impala
- 1997-2005 Chevrolet Malibu
- 2000-2007 Chevrolet Monte Carlo
- 1999-2004 Oldsmobile Alero
- 1998-2002 Oldsmobile Intrigue
- 1999-2005 Pontiac Grand Am

12.    Plaintiff KAREN CARR survives ROBERT MILLS and brings this action on behalf of all eligible class members.  Robert Mills operated a subject vehicle, a 2007 Buick Lucerne, on May 14, 2014.  The vehicle's VIN is 1G4HP57287U141688.   On that date, Robert Mills was traveling southbound on County Road 95A in Escambia County, Florida.  As he traveled he was hit by another vehicle, causing him to lose control of his vehicle before traveling onto the northbound shoulder, ultimately colliding with a mobile home.   Despite a significant impact, the frontal airbags did not deploy in the crash due to the defects set forth herein.  If such airbags had deployed, Robert Mills would either not have suffered injuries or suffered greatly reduced injuries.  Defendant's defects as alleged herein were the direct and proximate cause of his injuries.

13.    Plaintiff RICHARD GRANT was the operator of a subject vehicle, a 2006 Cadillac DTS, manufactured and sold by Defendant, on May 6, 2014.   The vehicle's VIN is

5

1GGKD57996U119670.  On that date, Plaintiff Richard Grant was traveling north on Tillman Nursery Road in Sumter County, South Carolina when, due to the defects alleged herein, he lost control/power of the vehicle.  This caused him to leave the roadway and strike a tree.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Richard Grant would either not have suffered injuries or suffered greatly reduced injuries.  Defendant's defects as alleged herein were the direct and proximate cause of his injuries.

14.     Plaintiff ALICE FLAKE was a passenger in a Subject Vehicle, a 2004 Chevrolet Impala, manufactured and sold by Defendant, on June 17, 2014.  The vehicle's VIN is 2G1WF52E449382049.  On that date, Plaintiff Alice Flake was traveling westbound on Grand Avenue approaching its intersection with Waldron Road in Sebastian County, Arkansas.   As her vehicle traveled through the intersection, it collided with another vehicle.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Alice Flake would either not have suffered injuries or suffered greatly reduced injuries.  Defendant's defects as alleged herein, were the direct and proximate cause of her injuries.

15.     Plaintiff AARON LYLE was the operator of a Subject Vehicle, a 2005 Pontiac Grand Prix, manufactured and sold by Defendant, on May 7, 2013.  The vehicle's VIN is 2G2WS522051351720.  On that date, Plaintiff Arron Lyle was traveling southbound on 3rd Street in Jefferson County, Kentucky.  As he was driving, due to the defects alleged herein, Plaintiff Aaron Lyle lost power/control to the vehicle.  This loss of power/control caused his vehicle to drift into the right lane and strike a traffic light pole.  Despite a significant impact, the frontal airbags did not deploy in the crash.  If such airbags had deployed, Plaintiff Aaron Lyle would either not have suffered injuries or suffered greatly reduced injuries.  Defendant's defects as alleged herein were the direct and proximate cause of his injuries.

16.     As a result of the collisions described above, Plaintiffs suffered serious physical

injuries and/or deaths and Defendant's defects as alleged herein were the direct and proximate cause of their injuries and/or deaths.

17.    Unbeknownst to the Plaintiffs, their vehicles had serious and unreasonably dangerous defects with the ignition switches, electronic stability control system, steering system defect, vehicle crashworthiness, and/or lack of airbag sensors for rollover vehicle accident protection. Specifically, the ignition switch had the ability to change from the "Run" position to the "Accessory" position while the vehicle was moving, thereby causing the engine to lose power with a resultant loss of power to the steering, brakes, and other essential safety functions of the car. This defective condition directly resulted in a loss of safety functionality exactly at the time and place where the Plaintiffs most needed these essential functions to lessen the impact of the collisions.  Additionally, at virtually any time, their vehicle's electronic power steering assist could shut off, making it extremely difficult to steer the vehicle.  This defective condition directly resulted in a loss of safety functionality exactly at the time and place where the Plaintiff most needed these essential functions.

18.    The problems with the Plaintiffs' vehicles were not unique. The Subject Vehicles were some of many vehicles subject to recent recall(s) relating to a large number of GM vehicles' ignition switches and electronic stability control systems.  Recall notices were issued by New GM for certain makes of its vehicles, including the Plaintiffs' vehicles, throughout 2014.  In these recalls, New GM issued notices to the National Highway Traffic Safety Administration ("NHTSA"), notifying it of recalls to include the vehicles mentioned in Paragraph 48 of this petition. The total number of vehicles affected by these recalls is in the millions.

19.    As part of these recalls, New GM admitted that if the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "Run" position.

20.     New GM further admitted that if this occurred, engine power, power steering, and power braking will be affected, increasing the risk of a crash or vehicle stall.

21.     GM began installing defective ignition switches beginning as early as 2000 in certain GM vehicle models. Upon information and belief, GM knew the ignition switches were defectively designed, but nonetheless continued to manufacture and sell defective ignition switches with the knowledge that they would be used in GM vehicles, including the Subject Vehicles.

22.     As background, and not as a basis for damages, the recently published "Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls" authored by Anton R. Valukas ("The Valukas Report"), provides that GM made a conscious decision, in the fall of 2002, to use the defective ignition switch in the Subject Vehicles "that was so far below GM's own specifications that it failed to keep the car powered on in circumstances that drivers would encounter." GM knew of, and approved, the final version of the Ignition Switch that was installed in millions of cars despite knowing that the force required to disengage the ignition switch was far below minimum specifications.

23.     As background, and not as a basis for damages, according to documents obtained by a United States House of Representatives committee during an investigation into the Defective Ignition Switches, GM opened an opened an engineering inquiry about the defective Ignition Switch in 2004 after customers complained that the Subject Vehicles could be turned off while driving.

24.     As background, and not as a basis for damages, in addition, as early as 2005, GM knew that a key hole design modification that would require a piece price increase of $0.50 per vehicle could prevent certain movements in the ignition switch of certain GM vehicles with the same or similar ignition switches. Yet GM found that the part was too expensive and the change would take too much time.

25.    Because of defects in their design, the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions.  The key sold with the Plaintiff's vehicles has a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"). When this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the safety vehicles' safety features.

26.    The Ignition Switch Defect can occur at any time during normal and proper operation of the Subject Vehicles, meaning the ignition can suddenly switch off while it is moving at 70 mph on the freeway, leaving the driver unable to control the vehicle, and vulnerable to a nonfunctioning safety system.

27.    The Ignition Switch Defect precludes drivers and owners of the Subject Vehicles, such as Plaintiffs, from proper and safe use of their vehicles, reduces vehicle occupant protection, and endangers them and other vehicle occupants. However, no driver or owner of the Subject Vehicles, including the Plaintiffs, knew, or could reasonably have discovered, the Ignition Switch Defect, prior to it manifesting in a sudden and dangerous failure.

28.    Upon information and belief, prior to the sale of the Subject Vehicles, GM knew of the Ignition Switch Defect through sources such as pre-release design, manufacturing, and field testing data; in-warranty repair data; early consumer complaints made directly to GM, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or posted on public online vehicle owner forums; field testing done in response to those complaints; aggregate data from GM dealers; and accident data.  Despite this

knowledge, GM failed to disclose and actively concealed the defects in the ignition switch from the Plaintiffs and the public, and continued to market and advertise the Subject Vehicles as reliable and safe vehicles, which they are not.

29.     As a result of GM's misconduct, the Plaintiffs suffered actual damages and physical injuries, in that the Subject Vehicles are unsafe, unfit for their ordinary and intended use, and have manifested, or are at unreasonable risk of manifesting, the Ignition Switch Defect by way of a sudden and dangerous failure that puts them and others at serious risk of injury or death. Drivers and owners of the Subject Vehicles, including the Plaintiffs, did not receive the benefit of their bargain as purchasers and/or lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations. Drivers and owners of the Subject Vehicles, including the Plaintiffs, did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided, as GM knew but did not disclose, through the use of non-defective ignition parts. This paragraph does not seek any damages for any economic loss of value of the Subject Vehicles nor any consumer fraud damages.

## COUNT I: STRICT LIABILITY – MANUFACTURING DEFECT

30.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

31.     Defendant   designed,   selected,   inspected,   tested,   assembled,   equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including but not limited to, equipping them with an ignition switch, steering system, rollover sensing system, and   crash   protection   system   with   design,   manufacturing,   and/or   marketing   defects,   more

10

particularly set forth herein.

32.    Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the Plaintiffs' vehicles, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

33.    At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

34.    It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the Plaintiffs' vehicles, and used in the manner for which they were intended by the Defendant.

35.    At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

(a)    the Subject Vehicles, including their component parts, which includes their ignition switches, electronic stability control, and steering systems contained manufacturing defects;

(b)    the ignition switches in the Subject Vehicles were inadequately designed and manufactured;

(c)    the Subject Vehicles, including their component parts, which includes their ignition switches, were not made in accordance with Defendant's specifications or performance standards;

(d)    the Subject Vehicles, as designed and manufactured, lack crashworthiness sufficient to comply with occupant protection standards; and/or

(e)     the Subject Vehicles, as designed and manufactured, lack appropriate airbag sensors to protect occupants in a roll over vehicle crash.

36.     The manufacturing defects of the Subject Vehicles, including the Plaintiffs' vehicles, occurred while the product was in the possession and control of the Defendant.

37.     The manufacturing defects of the Subject Vehicles, including the Plaintiffs' vehicles, existed before they left the control of Defendant.

38.     It was foreseeable to Defendant that the Subject Vehicles and their component parts, including the ignition switch, which were manufactured, designed, inspected, tested, assembled, equipped, distributed, and/or sold or otherwise placed into the stream of commerce would fail and cause users and consumers like the Plaintiffs to be unable to control said vehicles and be involved in a collision.

39.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically and economically injured.  Their injuries and damages are permanent and will continue into the future.  For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and support of, the deceased family member.  They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count I against Defendant for damages

in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT II: STRICT LIABILITY - DESIGN DEFECT

40.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

41.    Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including but not limited to, equipping them with an ignition switch, steering system, rollover sensing system, and crash protection system with design, manufacturing, and/or marketing defects, more particularly set forth herein.

42.    Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the Plaintiffs' vehicles, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

43.    At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including the ignition switch and steering system, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

44.    It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the Plaintiffs' vehicles, and used in the manner for which they were intended by the Defendant.

45.    At all times relevant herein, the Subject Vehicles were designed, developed,

manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

(a)    having an ignition switch that is inadequately designed and located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)    having an ignition switch that allows the Plaintiffs' vehicles to stall or lose engine power, and steering and/or full braking ability while driving;

(c)    having frontal airbags that may not deploy when the key is in the accessory/off position;

(d)    lacking adequate occupant protection and/or airbag sensors to protect vehicle occupants during rollover crashes; and,

(e)    have a defective electronic stability control system and steering system that causes the vehicle driver to lose control as normal speeds;

(f)    failing to adequately warn the Plaintiffs, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to GM, so that individuals like the Plaintiffs could make informed and prudent decisions regarding the purchase and/or use of such vehicles.

46.    When placed in the stream of commerce, the Subject Vehicles were defective in design, in that they were not reasonably fit, suitable, or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design, making the use of the Subject Vehicles more dangerous than an ordinary consumer would expect, and more dangerous than risks associated with alternatives.

47.    In addition, at the time the Subject Vehicles left the control of the Defendant, there were practical and feasible alternative designs of the Subject Vehicles and their component parts, including the ignition switches that would have prevented and/or significantly reduced the risk of Plaintiffs' injuries without impairing the reasonably anticipated or intended function of the Subject Vehicles.  These safer alternative designs were economically and technologically feasible, and

would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the Subject Vehicle's utility.

48.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically and economically injured.  Their injuries and damages are permanent and will continue into the future.  For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and support of, the deceased family member.  They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count II against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT III: STRICT LIABILITY - FAILURE TO WARN

49.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

50.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the Plaintiffs' vehicles, and component parts thereof, including but

not limited to, equipping them with an ignition switch, steering system, rollover sensing system, and crash, manufacturing, and/or marketing defects, more particularly set forth herein.

51.     Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the Plaintiffs' vehicles, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

52.     At all times relevant herein, the Subject Vehicles were expected to reach, and in fact did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

53.     At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles and component parts thereof, including the ignition switch system, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

54.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the Plaintiffs' vehicles, and used in the manner for which they were intended by the Defendant.

55.     At all times relevant herein, the Subject Vehicles, including the Plaintiffs' vehicles, were defective and unreasonably dangerous when they left the possession of Defendant in that they contained warnings insufficient to alert consumers and users, including the Plaintiffs herein, of the dangerous risks associated with the defective condition of the Subject Vehicles, notwithstanding Defendant's knowledge of the dangerous risks, including but not limited to the following:

(a)     having an ignition switch that is inadequately designed, constructed, and/or located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)     having an ignition switch that allows the Plaintiffs' vehicles to stall or lose engine power, and steering and/or full braking ability while driving;

(c)     having frontal airbags that may not deploy when the key is in the accessory/off position; and,

(d)     lacking adequate occupant protection and/or airbag sensors to protect vehicle occupants during rollover crashes; and,

(e)     have a defective electronic stability control system and steering system that causes the vehicle driver to lose control as normal speeds;

(f)     failing to adequately warn the Plaintiffs, other consumers, or the public in general, about the unsafe and defective condition and design of the Subject Vehicles known to GM, so that individuals like the Plaintiffs could make informed and prudent decisions regarding the purchase and/or use of such vehicles.

56.     The Plaintiffs could not, by the exercise of reasonable care, have discovered the defects herein mentioned and perceived their danger.

57.     Defendant knew or should have known of the risks of the defective condition of the Subject Vehicles and their component parts.

58.     Additionally, Defendant, as manufacturer, designer, distributor, and/or seller of the Subject Vehicles is held to the level of knowledge of an expert in the field.

59.     The Plaintiffs reasonably relied upon the skill, superior knowledge and/or judgment of Defendant.

60.     Defendant had a duty to warn the Plaintiffs and consumers of the dangers associated with the Subject Vehicles and their component parts, including the ignition switch.

61.     Despite Defendant's knowledge of the risks of the defective condition of the Subject Vehicles and their component parts, Defendant failed to adequately warn the Plaintiffs and consumers of those risks.

62.     Had the Plaintiffs received adequate warnings regarding the unsafe and defective condition of the Subject Vehicles and their risks, they would not have purchased and/or used such

vehicle.

63.    As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally, and economically injured.  Their injuries and damages are permanent and will continue into the future.  For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and support of, the deceased family member.  They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count III against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT IV: NEGLIGENCE

64.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

65.    Defendant was negligent in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles.

66.     Defendant had a duty to individuals, including Plaintiffs, to use reasonable care in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles.

67.     Defendant was negligent in failing to use reasonable care as described here in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles. Defendant breached its aforementioned duty by:

(a)     Failing to design the ignition switch, the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants, including Plaintiffs, of the Subject Vehicles, including the Plaintiffs' vehicles;

(b)     Failing to manufacture the ignition switch, the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, the Plaintiffs' vehicles, including Plaintiffs;

(c)     Failing to use reasonable care in the testing of the ignition switch, the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the Plaintiffs' vehicles, including Plaintiffs;

(d)     Failing to use reasonable care in inspecting the ignition switch the power control modules, and/or the airbag protection systems so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the Plaintiffs' vehicles, including Plaintiffs; and,

(e)     Otherwise negligently or carelessly designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles;

(f)     lacking adequate occupant protection and/or airbag sensors to protect vehicle occupants during rollover crashes; and,

(g)     having a defective electronic stability control system and steering system that causes the vehicle driver to lose control as normal speeds.

68.     Defendant also negligently failed to warn or instruct the Plaintiffs and/or others that the defects were selected and installed in the Subject Vehicles, including the Plaintiffs' vehicles, had an unsafe and defective condition and design which was known to Defendant.

69.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries. They have endured, and will continue to endure, substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity. Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically and economically injured. Their injuries and damages are permanent and will continue into the future. For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and economic and social support of, the deceased family member. They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support. Plaintiffs seek actual and aggravating/punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count IV against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

### COUNT V: FRAUDULENT CONCEALMENT

70.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

71.    At all times during the course of dealing between Defendant and Plaintiffs and the general public, Defendant misrepresented the safety of the Subject Vehicles, including the Plaintiffs' vehicles, for their intended use.

72.    Defendant knew or was reckless in not knowing that its representations were, in fact, false.

73.    In representations to Plaintiffs and the general public, Defendant fraudulently concealed and intentionally omitted material information, including but not limited to, the fact that:

(a)    the Subject Vehicles were manufactured and/or designed negligently, defectively, and/or improperly in that the ignition switches and other systems as set forth above were installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions;

(b)    the keys sold with the Subject Vehicles have a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"); and,

(c)    when this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the vehicle safety system.

74.    Defendant was under a duty to disclose to Plaintiffs and consumers the defective nature of the Subject Vehicles, including, but not limited to, the Ignition Switch Defect, electronic stability control defect, steering defect, crashworthiness defects, and lack of rollover airbag sensor defect.

75.    Defendant had sole access to material facts concerning the defective nature of the Subject Vehicles and its propensity to cause serious and dangerous side effects, and hence cause damage to persons who used the Subject Vehicles, including Plaintiffs in particular.

76.    Defendant's concealment and omissions of material facts concerning, inter alia, the safety of the Subject Vehicles was made purposefully, willfully, wantonly, and/or recklessly, to

mislead Plaintiffs and consumers into reliance on the use of the Subject Vehicles, and to cause them to purchase and/or use the product.

77.    Defendant knew that consumers had no way to determine the truth behind Defendant's concealment and omissions, as set forth herein.

78.    Plaintiffs reasonably relied on facts revealed which negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

79.    As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries. They have endured, and will continue to endure, substantial pain and suffering. They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity. Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically and economically injured. Their injuries and damages are permanent and will continue into the future. For the plaintiffs who bring claims of wrongful death and/or survival actions, those Plaintiffs have suffered loss of companionship, guidance, time with, and support of, the deceased family member. They have further suffered funeral expenses, past medical expenses, loss of economic support, lost past and future earnings, and lost household contributions and support. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs each pray for judgment in Count V against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## VI. STATUTORY ACTIONS

80.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this

Petition as if fully copied and set forth at length herein.

81.    For all claims that are subject to a state statutory regime, those claims are brought

under the applicable state statutes as follows:

- For Plaintiffs whose claims are subject to Alabama's product liability statute(s), those claims are brought pursuant to Ala. Code 1975 §§ 6-5-500 *et seq*.

- For Plaintiffs whose claims are subject to Arizona's product liability statute(s), those claims are brought pursuant to Ariz. Rev. Stat. Ann. §§ 12-681 *et seq*.

- For Plaintiffs whose claims are subject to the Arkansas Product Liability Act of 1979, those claims are brought pursuant to Ark. Code Ann. §§ 16-116-01 *et seq*.

- For Plaintiffs whose claims are subject to the Colorado Product Liability Act, those claims are brought pursuant to Colo. Rev. Stat. Ann. §§ 13-21-401 *et seq*.

- For Plaintiffs whose claims are subject to the Connecticut Product Liability Act, those claims are brought pursuant to Conn. Gen. Stat. §§ 52-572m *et seq*.

- For Plaintiffs whose claims are subject to the Idaho Product Liability Reform Act, those claims are brought pursuant to Idaho Code §§ 6-1401 *et seq*.

- For Plaintiffs whose claims are subject to the Indiana Product Liability Act, those claims are brought pursuant to Ind. Code Ann. §§ 34-20-1-1 *et seq*.

- For Plaintiffs whose claims are subject to the Kansas Product Liability Act, those claims are brought pursuant to Kan. Stat. Ann. §§ 60-3301 *et seq*.

- For Plaintiffs whose claims are subject to the Product Liability Act of Kentucky, those claims are brought pursuant to Ky. Rev. Stat. Ann. §§ 411.300 *et seq*.

- For Plaintiffs whose claims are subject to the Louisiana Products Liability Act, those claims are brought pursuant to La. Rev. Stat. Ann. §§ 9:2800.52 *et seq*.

- For Plaintiffs whose claims are subject to Michigan's products liability statute(s), those claims are brought pursuant to Mich. Comp. Laws. Ann. §§ 600.2945 *et seq*.

- For Plaintiffs whose claims are subject to the Mississippi Products Liability Act, those claims are brought pursuant to Miss. Code Ann. §§ 11-1-63.

- For Plaintiffs whose claims are subject to Missouri's product liability statute(s), those claims are brought pursuant to Mo. Stat. Ann. §§ 537.760 *et seq*.

- For Plaintiffs whose claims are subject to Nebraska's product liability statute(s), those claims are brought pursuant to Neb. Rev. Stat. §§ 25-21, 180 *et seq*.

- For Plaintiffs whose claims are subject to New Jersey's product liability statute(s), those claims are brought pursuant to N.J. Stat. Ann. §§ 2A:58C-1 *et seq*.

- For Plaintiffs whose claims are subject to the North Carolina Products Liability Act, those claims are brought pursuant to N.C. Gen. Stat. Ann. §§ 99B-1 *et seq*.

- For Plaintiffs whose claims are subject to North Dakota's product liability statute(s), those claims are brought pursuant to N.D. Cent. Code §§ 28-01.3-01 *et seq*.

- For Plaintiffs whose claims are subject to the Ohio Product Liability Act, those claims are brought pursuant to Ohio Rev. Code §§ 2307-71 *et seq*.

- For Plaintiffs whose claims are subject to Oregon's product liability statute(s), those claims are brought pursuant to Or. Rev. Stat. Ann. §§ 30.900 *et seq*.

- For Plaintiffs whose claims are subject to the Tennessee Products Liability Act of 1978, those claims are brought pursuant to Tenn. Code Ann. §§ 29-28-101 *et seq*.

- For Plaintiffs whose claims are subject to Texas's product liability statute(s), those claims are brought pursuant to Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001 *et seq*.

- For Plaintiffs whose claims are subject to the Utah Product Liability Act, those claims are brought pursuant to Utah Code Ann. §§ 78B-6-701 *et seq.*

- For Plaintiffs whose claims are subject to the Washington Product Liability Act, those claims are brought pursuant to Wash. Rev. Code Ann. §§ 7.72.010 *et seq.*

- For Plaintiffs whose claims are subject to Wisconsin's product liability statute(s), those claims are brought pursuant to Wis. Stat. Ann. §§ 895.046 *et seq.*

### COUNT VII: PUNITIVE DAMAGES

82.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

83.     While New GM expressly accepted responsibility for accident occurring on or after July 10, 2009, it also acquired knowledge of Old GM's activities generally, and the existence of the defective ignition switches and or electronic stability control defects in place in millions of vehicles specifically. New GM acquired personnel, documents, and electronic data from Old GM, including but not limited to, top leadership personnel, executives, members of the Board of Directors, internal legal counsel, engineers and quality control personnel. Most importantly, New GM retained the engineer in charge of designing and approving the manufacturing specifications of the defective ignition switch. The employees retained by New GM carried with them the knowledge they gained at Old GM. New GM also acquired knowledge about the issues with the ignition switch, moving stalls and airbag non-deployment through the chief engineer, design and manufacturing documents, internal memorandum, and reports to the Board of Directors. New GM continued to service – and to receive complaints about – vehicles manufactured on Old GM's watch.

84.     New GM also acquired certain duties with regard to vehicles in production and on

the road at the time of the Sale and Purchase Agreement – duties it breached egregiously – as has been well-publicized and for which it has been justifiably criticized. These duties included, but are not limited to, those arising under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § and the Transportation Recall Enhancement, Accountability and Documentation Act, 49 U.S.C. §§ 30101-30170. GM was fined $35 Million by NTSHA for its delayed reporting of the ignition switch problem and violating federal safety laws.

85.    New GM's liability for damages is attributable to its own post-sale conduct and failure to timely remedy and/or recall vehicles it knew had deadly defects, even with regard to vehicles manufactured and sold prior to the Sale and Purchase Agreement.

86.    Defendant sold the Subject Vehicles, including the Plaintiffs' vehicles, to consumers without doing adequate testing to ensure that the Subject Vehicles were reasonably safe for their use and intended purposes.

87.    Defendant sold the Plaintiffs' vehicles in spite of its knowledge that the ignition switches can unexpectedly and suddenly move from the "On" or "Run" position while the vehicles are in operation to the "Off" or "Accessory" position, and despite full knowledge of the other defects listed in this Complaint, thereby causing severe injuries suffered by Plaintiffs and numerous other individuals.

88.    Defendant ignored reports of consumers, which began as early as 2004 and continue to the date of the recalls in this case, regarding the ignition switch of certain GM vehicles with the same or similar ignition switches throughout the United States and elsewhere of the products' failures to perform as intended, which led to the severe injuries suffered by Plaintiffs and numerous other individuals.

89.    Defendant knew of the Subject Vehicles' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the products so as to maximize

sales and profits at the expense of the health and safety of the public.

90.     Defendant, through its conduct in designing, testing, manufacturing, assembling, marketing, selling, and failing to adequately repair the Plaintiffs' vehicles purchased and/or used by Plaintiffs, demonstrated willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifferent to consequences, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that in addition to actual damages, they be awarded an additional amount as and for punitive damages in their favor and against Defendant, in an amount which will serve to punish Defendant and deter Defendant and others from like conduct in the future.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

By: */s/ Eric G. Jensen_____*
        Eric G. Jensen MO# 43094
        Derek H. Potts MO# 44882
        3737 Buffalo Speedway, Suite 1900
        Houston, Texas 77098
        (713) 963-8881 (telephone)
        (713) 583-5388 (facsimile)
        ejensen@potts-law.com
        dpotts@potts-law.com

**ATTORNEYS FOR PLAINTIFF**